## HALSEY BAKER *versus* JOSEPH COREY *et al.*

In declaring on a contract which has been performed, and has resulted in an obligation simply to pay money, it is sufficient to set out the indebtedness, without specially stating the contract from which it arises.

The owners of a fishing vessel may hire men to navigate the vessel and to fish for the account of the owners, on wages instead of shares; and if one of the owners act as master, and the others do not interfere in the management of the vessel, he will be deemed their agent, and such a contract made by him in his own name, will enure to their use, and be binding on them.

Where a seaman who had made a contract for wages on a fishing voyage, was induced, by fraudulent misrepresentations to sign shipping articles by which he would receive a share of the fish as his compensation, it was *held*, that the prior contract remained unaffected by the articles.

ASSUMPSIT against the owners of the brig Rising States, to recover the amount due to the plaintiff, for the services of himself and a minor son, on a fishing voyage to the Straits of Belle Isle, during the summer of 1834. Trial before *Wilde* J.

The declaration contained three counts. The first was indebitatus assumpsit. The second was for the son's wages. The third set forth, that the defendants, by their certain writing obligatory under the hand of the defendant, Joseph Corey, who was master and part owner of the vessel in question, agreed that, if the plaintiff would go on the voyage, they would pay him the sum of $ 33 per month.

The written agreement declared on was as follows : " This is an agreement between Captain Halsey Baker and myself, on a fishing voyage to the straits, on board the brig Rising States, that I shall give him thirty-three dollars per month for the voyage. If a share amounts to more, he is to have it. Newport, May 21, 1834. Joseph Corey."

The defence set up was, that both the plaintiff and his son had signed articles of agreement, by which they were to receive a certain share of the fish caught by them, and therefore that they were not entitled to wages by the month. It appeared that the articles were signed several days after the vessel left the port of New Bedford and while in the British dominions.

The plaintiff contended, that these articles of agreement were not binding upon him, on the ground, that their contents

were fraudulently concealed by Corey, who told him, the sole object thereof was to enable the owners to obtain the bounty on the vessel under the laws of the United States ; and evidence was produced tending to prove these facts.  It was also contended, on the part of the plaintiff, that the written agreement declared on, controlled the rate of wages to be paid for the services of the plaintiff.

As to that part of the case which relates to the wages of the plaintiff, the jury were instructed, that if, from the evidence, they believed that the plaintiff did not know the contents of the articles of agreement, but was induced to sign them through the fraudulent misrepresentations of Corey, they should find a verdict in favor of the plaintiff, for his services, at the rate of $ 33 per month.

The jury returned a verdict for the plaintiff accordingly.

If the instruction was erroneous, a new trial was to be granted.

*Coffin*, for the defendants.

*Hathaway* and *Alden*, for the plaintiff, to the point, that the contract signed by Corey was binding on all the owners of the vessel, cited 2 Dane's Abr. 324 ; *Fenn* v. *Harrison*, 3 T. R. 757 ; *S. C.* 4 T. R. 177.

SHAW C. J.   The first exception taken at the trial and now renewed, is, that there is a variance between the special agreement set forth in the third count, and that proved ; that it is set forth as an absolute agreement for $ 33, whereas the agreement was, to pay the plaintiffs $ 33 per month, or a share of fish, at his election.   Were this the only count, it might be open to this exception ; but there is a count in *indebitatus assumpsit* for services.   Then we take the rule to be well settled, that in declaring on an open executory contract, it must be set forth truly and fully ; but when the contract has been performed, and has resulted in an obligation to pay money, it is sufficient to set out the indebtedness, without stating the contract specially, from which it arises.  *Felton* v. *Dickinson*, 10 Mass. R. 287.

It was then contended that the agreement made by Corey, the master, if made as alleged, was binding on him alone, and

not on the owners. In considering this question, we are to treat it as if the articles made by the plaintiff and his son, to go on shares, were out of the question, as null and void ; beause, if they were binding, they would be conclusive.

By the general rule of the maritime law, the personal contract of the master for the wages of seamen, binds the owners, and the seamen may have their remedy against either. But there may be a distinction between freighting vessels and fishing vessels, in this respect ; and we do not think it necessary to place the decision of the present case on that ground.

But it is obvious, we think, that the contract enures to the benefit of the owners, because the fish, when caught and brought in, are considered as their property ; and even where there is a valid and binding contract made pursuant to the laws of the United States, to go on shares, the fish are delivered in the first instance to the owners ; and the remedy of the fisherman must be on the master or owners.

But, whatever may be the common custom, or the law of the United States, in regard to bounty, it is competent for the owners of a fishing vessel, to engage men at wages, to navigate the vessel and take fish for their account. And the Court are of opinion, that where one of the owners of a fishing vessel, acts as master, and the others do not interfere, he must be deemed agent for the owners ; that the contract enures to their use, and binds them jointly, and that such was the effect of the agreement in the present case.

The last ground of defence was, that the plaintiff and his son had both signed articles, stipulating to go the voyage on shares. But it was answered, and evidence was offered to prove, that the signatures to these articles were obtained by false and fraudulent representations, to enable the owners to obtain the bounty under the laws of the United States. Nothing, we think, can be clearer, than the correctness of the instruction given on this point. If the signatures of the plaintiff and his son were obtained by false and fraudulent representations of Corey as to the effect and the purposes of these articles, and the contents were concealed from them, they were not binding as agreements ; and therefore the prior agreement of Corey stood unaffected by these articles. The evidence is

not reported, and its weight and sufficiency are not in question before us ; it was exclusively for the jury.

It was suggested, rather than made the ground of legal exception, that it would be dangerous to set aside a formal written agreement, between the master and a seaman, on the testimony of other seamen. The general rule is, that any instrument may be impeached by proof of fraud and imposition in obtaining it, and that such fraud may be proved by the testimony of witnesses. Other seamen, having no interest in the event of the cause, are competent, and if there is any thing in their personal characters, or in the relation in which they stand, to give them a bias in favor of a fellow-seaman, it goes to their credit. The same considerations apply to most cases, in which a seaman is a party on one side, and a master or owner on the other.

*Judgment on the verdict for the plaintiff.*